IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HAVERFORD SQUARE PROPERTIES, LLC,**  *Plaintiff,*  v.  **TRISURA SPECIALTY INSURANCE COMPANY,**  *Defendant.* | Civil No. 23-1847 |

MEMORANDUM

**Costello, J.**                                                                                                          **January 23, 2026**

      Plaintiff Haverford Square Properties, LLC owned a building in Philadelphia insured by Defendant Trisura Specialty Insurance Company ("the Property"). The Property's chimney collapsed and Defendant refused to pay Plaintiff's full claim. Plaintiff then sued Defendant for breach of contract. During the litigation, Plaintiff consulted an expert who concluded that all of Plaintiff's claimed loss was caused by the bricks that fell during the chimney collapse. Defendant disagrees and has moved to preclude this expert's testimony, arguing that his conclusions do not satisfy the minimum reliability requirements set forth in Federal Rule of Evidence 702. For the reasons that follow, the Court will deny Defendant's motion.

**I.       BACKGROUND**

      The Property's chimney collapsed during a windstorm, causing several bricks to fall onto the roof. ECF No. 27 at 1. Plaintiff subsequently submitted a claim under the policy issued by Defendant ("the Policy"). *Id.* After investigating the claim, Defendant found that the chimney collapse was a covered loss, but that the cost of repairs did not exceed the Policy's $5,000 deductible. ECF No. 26-2 at 2. Defendant therefore made no payment to Plaintiff. *Id.* Plaintiff

did not independently solicit any estimates for the cost to repair the chimney because it had already contracted to demolish the Property for separate business reasons. *Id.* at 4; *see also* ECF No. 22 at 2 (explaining that Plaintiff "made a business decision to completely demolish the Property and construct a larger building").

The same day as the chimney collapse, the City of Philadelphia Department of Licenses and Inspections ("L&I") inspected the Property and issued a notice stating that it was "in violation and unsafe pursuant to [the] property maintenance code" ("the Notice"). ECF No. 27 at 2. Several days later, L&I returned to the Property and issued an "Imminently Dangerous Structure" Order ("the Order") requiring Plaintiff to repair or demolish the building within 30 days. *Id.* The Order noted that the Property's east side rear wall was in danger of collapse. ECF No. 26-2 at 3-4.

Shortly after L&I issued the Order but prior to the demolition, Defendant retained an expert to investigate the origin and cause of the chimney collapse and damage to the rear wall. *Id.* at 4. Defendant's expert inspected the Property and determined that the "rear masonry wall was in a deteriorated condition prior to the [date of loss] as a result of long-term weathering, deferred maintenance, and long-term deflection/creep of the second-floor wood header which supported a portion of the third-floor masonry wall." *Id.* Based on these findings, Defendant denied Plaintiff's claim for the full cost of the demolition and rebuilding of the Property. *Id.*

**II.   DISCUSSION**

The parties dispute whether the Policy covers the demolition and rebuilding of the Property. A key issue in that dispute is whether the chimney collapse caused the structural damage requiring demolition or whether there was pre-existing damage.

2

Plaintiff alleges that the damage to the rear wall of the Property was caused by bricks that fell during the chimney collapse.  ECF No. 27 at 3.  Plaintiff relies on an expert report from Tim Sass, a structural engineer with over thirty years of experience in residential and commercial construction.  *Id.*  Sass concluded that the force of the impact from the falling chimney bricks pushed the rear wall out of plumb, cracking multiple joists and creating the risk of collapse.  ECF No. 26-5 at 8.  Sass never visited the Property to conduct an in-person inspection, but reviewed photographs, insurance letters, and other documents to form an opinion about the cause of the damage.  *See* ECF No. 26-5 at 2.  Defendant disputes these conclusions and has moved to preclude the expert testimony of Sass under Federal Rule of Evidence 702.

A. **LEGAL STANDARD**

To be admissible, expert testimony must be both reliable and relevant.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  Federal Rule of Evidence 702 provides that a qualified expert may offer an opinion if (1) his or her testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has applied the principles and methods reliably to the facts of the case.[1]  Fed. R. Evid. 702(b)-(d).

The reliability analysis required by *Daubert* "'applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion.'"  *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 290 (3d Cir. 2012) (quoting *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999)).  In 2023, Rule 702 was amended to clarify that "a court must evaluate the reliability of an expert's conclusions drawn from his or her methodology, not just the methodology itself."  *Bolder v. Brecker*, 23cv05138,

---

[1] The parties do not dispute that Sass is a qualified expert or that his testimony is relevant to the issues of the case.  The Court agrees that these requirements are satisfied.

3

2025 WL 3048966, at *2-3 (E.D. Pa. Oct. 31, 2025) (internal quotations omitted). In undertaking this analysis, trial courts serve an important gatekeeping function to "ensure that [a proposed] expert's opinion [is] based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *ZF Meritor*, 696 F.3d at 290 (internal quotations omitted).

"'The Rules of Evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact[]' and Rule 702 'has a liberal policy of admissibility.'" *Doe v. Haverford Sch.*, 24cv0618, 2025 WL 3008138, at *6 (E.D. Pa. Oct. 27, 2025) (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)). Accordingly, "[t]he party offering an expert does not need to show that the expert's opinions are necessarily correct, but rather only that the opinions are reliable by a preponderance of the evidence." *Penn-Dion Corp. v. Great Am. Ins. Co. of New York*, 17cv4634, 2022 WL 20742700, at *1 n.1 (E.D. Pa. Apr. 20, 2022) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1997)). "Rule 702 and *Daubert* put their faith in an adversary system designed to expose flawed expertise." *U.S. v. Mitchell*, 365 F.3d 215, 244-45 (3d Cir. 2004). "As long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *Id.* at 244 (internal quotations omitted).

Defendant raises several issues with the reliability of Sass's expert report and deposition testimony. None warrant preclusion under Rule 702.

4

B.    APPLICATION

1.    **Sufficient Facts or Data**

Defendant makes three arguments in support of its position that Sass relied on insufficient facts and data. Each is unavailing.

First, Defendant argues that Sass relied on insufficient facts and data because he was retained three years after the reported loss and after the Property had been fully demolished, so he never actually visited the Property for an inspection. ECF No. 26-2 at 2. The fact that Sass never visited the Property does not necessarily render his testimony unreliable. An expert need not physically inspect or examine the subject of his or her testimony and may use second-hand materials and experience to draw reasonable inferences. *See Daubert*, 509 U.S. at 592 ("Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."); *see also, e.g.*, *Liberty Towers Philly LP v. Ulysses Asset Sub II, LLC*, 18cv4357, 2020 WL 3642483, at *4-5 (E.D. Pa. July 6, 2020) ("Tests and studies are not necessarily required in order to establish reliability."); *Campmor, Inc. v. Brulant, LLC*, 09cv5465, 2013 WL 1750009, at *3 (D.N.J. Apr. 23, 2013) ("Neither *Daubert* nor *Kumho Tire* requires physical examination where informed and reasonable inferences can be made from photographic evidence and the reliable testimony of others.") (internal quotations and citations omitted).

Second, Defendant argues that Sass used a single photograph of cracked joists at the Property to reach his conclusions and was unable to identify other photographs he used in his review. ECF No. 26-2 at 7-9. This is a mischaracterization. Sass's report states that he reviewed several documents to inform his opinion, including the complaint in this action, the L&I Notice and Order, an abatement work invoice, a collapse letter, the deposition transcript of Defendant's

5

representative, the insurance denial letter, Defendant's expert report, and "photographs." ECF No. 26-5 at 2; *see also* ECF No. 26-6 at 34:24-35:8 (Sass testifying that he informed his opinion on the documents listed in the report and his "expertise and knowledge of construction processes and physics"). Moreover, Sass explicitly testified in his deposition that he reviewed several pre-loss photographs of the Property and additional photographs of the rear wall. *See* ECF No. 26-6 at 38:5-39:1; 41:3-10. Thus, Sass consulted more than a "single photograph" in constructing his opinion.

Defendant is seemingly correct that the actual analysis in Sass's report about the cause of the structural damage only cites to one photograph of the cracked joists (Figure 03). *See* ECF No. 26-5 at 8. But when asked in his deposition why he did not include any pictures of the rear wall in his report, Sass explained that "[y]ou can't really see an out-of-plumb wall on a photograph" and thought the photo of the L&I Order sufficiently covered the state of the rear wall. ECF No. 26-6 at 42:10-21. Regardless, it is clear from Sass's deposition testimony that his opinion was informed by his experience, several photographs, and the other numerous documents cited in his report.

In other similar cases involving accidents or property damage in which courts denied motions to preclude experts based on a lack of firsthand knowledge of the subject matter, the experts relied on similar types of information. For instance, in *Philly LP v. Ulysses Asset Sub II, LLC*, the court declined to preclude an expert where the expert's report was based on his review of someone else's inspection reports and a variety of other second-hand records. 2020 WL 3642483, at *5. Similarly, in *Marcum v. Columbia Gas Transmission, LLC*, the court denied a motion to preclude because the expert's opinions and testimony were "based on his years of experience as an engineer," prior work on similar projects, and various photographs and

construction-related documents. 549 F. Supp. 3d 408, 416-18 (E.D. Pa. 2021). Sass similarly relied on images, insurance reports, the testimony of other witnesses, and his years of experience as an engineer specializing in construction. *See* ECF No. 26-5 at 2. These sources constitute "good grounds" for his opinion. *See In re Paoli*, 35 F.3d at 742.

      Third, Defendant argues that Sass's report is based on the erroneous belief that L&I inspected the Property prior to the date of loss. ECF No. 26-2 at 12. Defendant is correct that, in his deposition testimony, Sass often referenced his mistaken belief that L&I inspected the Property prior to the date of loss and did not observe any damage to the rear wall. *See, e.g.*, ECF No. 26-6 at 45:23-46:15; 76:2-14; 78:15-18. Sass cited this mistaken belief as one basis for his conclusion that the damage to that wall occurred because of the subsequent chimney collapse. *See id.* But that is not the only piece of information upon which Sass formed his opinion. Indeed, every time he made this point about L&I, it was preceded by or following an explanation of the other facts and principles he relied upon to reach his conclusion. For instance, Sass explained that the lack of oxidation in the cracks in the joists indicated that they were fresh, and the location of the cracks in the joists were consistent with a masonry fall from the height of the roof. *See id.* at 69:5-13; 73:11-74:11; 91:2-93:14.

      Sass's reliance on one erroneous piece of information does not render the rest of the facts and data informing his opinion unreliable. Defendant can cross-examine Sass about the degree to which his opinion was influenced by the assumption that L&I inspected the Property prior to the date of loss, and the jury can decide what weight to give his testimony. But it is not grounds for preclusion of Sass's testimony altogether. *See Mitchell*, 365 F.3d at 244 (expressing preference that expert testimony be tested by the adversary process rather than excluded from jurors' scrutiny).

## 2. Reliable Principles and Methods

Defendant also criticizes Sass's principles and methodology by arguing that he failed to consider crucial pieces of information. Namely, (1) the effect of the removal of mural stabilization braces from the Property prior to the loss; (2) the pre-loss photographs of the joists that Sass concludes were cracked due to the chimney collapse; and (3) L&I's finding in its Order that the rear wall was damaged and in danger of collapse. *See* ECF No. 26-2 at 7-8, 13-14.

Plaintiff concedes that Sass did not consider the effect of the removal of mural stabilization braces from the Property when issuing his report. ECF No. 27 at 8 ("while Mr. Sass was unaware of the removal of the mural stabilization braces in the rear wall…"). But Sass testified at his deposition that this piece of information would not change his analysis of the cause of the damage to the rear wall in any way. *See* ECF No. 26-6 at 105:8-107:8. Defendant can cross-examine Sass about why the removal of the braces did not impact his analysis. *See Mitchell*, 365 F.3d at 244.

Again, Defendant is incorrect that Sass failed to consider pre-loss photographs of the cracked joist. He testified to reviewing and considering several pre-loss photographs. *See* ECF No. 26-6 at 38:5-39:1; 41:3-6. Defendant is also incorrect that Sass failed to consider L&I's finding in its Order that the rear wall was damaged and in danger of collapse or mention that finding in his report. ECF No. 26-2 at 14. Sass testified that he reviewed both the L&I Notice and Order before drafting his report and did not explicitly mention the Order because, in his view, the Order and Notice say essentially the same thing. *See* ECF No. 26-6 at 30:20-34:14.

Ultimately, Defendant's criticisms of Sass's methodology are not disqualifying under Rule 702. Defendant is not saying that Sass failed to articulate *any* methodology used to render his opinion. *See Doe*, 24cv0618, 2025 WL 3008138, at *9 (granting *Daubert* motion because

8

expert failed to "articulate a reliable method through which he reached his opinions in [the] case"). Rather, Defendant's criticisms amount to disputes about whether Sass overlooked certain pieces of information that he should have considered. These criticisms are more probative of "the weight the opinion should be afforded, rather than the reliability" of Sass's testimony. *See United States for Use of Colorado Custom Rock Corp. v. G&C Fab-Con, LLC; Everest Reinsurance Co.*, 24cv3053, 2025 WL 3090745, at *2-3 & n.5 (3d Cir. Nov. 5, 2025) (affirming district court's denial of *Daubert* motion because argument that expert "ignored critical facts and evidence" goes to weight, not reliability).

### 3. Reliable Application of Principles and Methods

Defendant's most fundamental criticism of Sass is that his conclusions do not stem from a reliable application of principles and methods to the facts of this case. Defendant argues that Sass's conclusion that the chimney collapse caused the damage to the rear wall is "directed from an incomplete understanding of a single photograph, subsequently extrapolated into a final 'opinion' through speculation and conjecture." ECF No. 26-2 at 14.

The Third Circuit has made clear that speculation is not an appropriate basis for an expert opinion. *Bolder*, 23cv05138, 2025 WL 3048966, at *8 (citing *Slatowski v. Sig Sauer, Inc.*, 148 F.4th 132, 138 (3d Cir. 2025)). An opinion must be "accompanied by an explanation of how it was the product of reliable principles and methods." *See Pugh v. Northampton Hosp. Co., LLC*, 23cv2262, 2024 WL 3581171, at *3 (3d Cir. July 30, 2024) (internal quotations omitted). In other words, an expert must "bridge[] the gap between theory and reality." *See Slatowski*, 148 F.4th at 138; *see also Husick v. Unum Life Ins. Co. of Am.*, 21cv5599, 2025 WL 3266123, at *4 (E.D. Pa. Nov. 21, 2025) (granting *Daubert* motion where "'there is simply too great an analytical gap between the data and the opinion proffered'") (quoting *General Elec. Co. v.*

9

*Joiner*, 552 U.S. 136, 146 (1997)).  But Sass's opinion is based on more than sheer speculation.  Plaintiff has demonstrated by a preponderance of the evidence that Sass's conclusions are based on an appropriate application of engineering principles and methods to the facts and data he reviewed in this case.

In both his report and deposition, Sass explained how he reached his conclusion that the chimney collapse caused the damage to the Property.  He explained that the cracks in the floor joists were not oxidized, meaning they were likely fresh, which was consistent with a more recent cause of damage, like the falling masonry.  *See* ECF No. 26-6 at 48:14-20.  Sass also explained that the location of the cracks supports his conclusion because they were located near the center of the span.  The center is "the most highly stressed part of the joists," so that is where he would expect to see damage from a chimney collapse.  *Id.*  Sass also explained that the Property's older building date supports his conclusions.  *Id.* at 44:1-25; 108:15-23.  In older buildings, chimneys and brick walls were structural elements rather than decorative add-ons.  Thus, compromises to those elements (like the damage to the chimney) are more likely to cause structural damage to the building at large.  *Id.* 108:15-109:13.

These explanations help Sass "bridge the gap" between his conclusions and his methods.  *See Slatowski*, 148 F.4th at 138.  Sass can describe to a jury what information he reviewed and explain how that information led him to his opinion about the cause of the damage to the Property.  *Compare to Carroll v. Dep't of Transp.*, 22cv0242, 2025 WL 3092337, at *9-12 (M.D. Pa. Nov. 5, 2025) (granting *Daubert* motion where expert did not "clearly articulate his process or explain how exactly" he reached his conclusion about causation, leaving the Court with "little to evaluate beyond the conclusion itself").  Defendant may disagree with Sass's conclusions, but that does not mean those conclusions are unreliable.

### III. CONCLUSION

Sass's conclusions meet the minimum reliability requirements of Rule 702. Defendant can test those conclusions at trial through competing expert testimony and active cross-examination. Accordingly, Defendant's motion is denied. An appropriate Order will follow.

BY THE COURT:

_____
MARY KAY COSTELLO
United States District Judge